[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action by the plaintiff wife against the defendant husband for dissolution of the marriage of the parties on the grounds of irretrievable breakdown. The defendant filed a cross-complaint incorporating the allegations of the plaintiff's complaint.
The court heard testimony from both parties and evaluated their credibility and demeanor. In addition, both parties submitted sworn financial affidavits and written proposed orders in addition to documentary evidence. Based upon the evidence, the court finds as follows.
The court has jurisdiction, and all statutory stays have expired. The marriage of the parties has broken down irretrievably.
The parties were married on August 24, 1972 when the wife was a seventeen year old high school junior then pregnant with the parties first child and the husband was a twenty two year old junior at Central Connecticut State College. The parties eventually had two children, both of whom are now adults. The wife did not continue to attend high school after the marriage, but later earned a G.E.D. diploma. Although encouraged to attend college by her G.E.D. instructor, she was not able to do so. The husband completed his college education by attending classes part time after the marriage.
The parties each believe that the other is more at fault for the breakdown of the marriage. The wife had an extra-marital affair in 1979 or 1980, and attempted suicide when feelings of guilt overwhelmed her. While she was hospitalized, she told the husband of the affair. Prior to and during the affair, the husband was verbally abusive to the wife, and although the parties attempted marital counseling at that time, that pattern continued. Ultimately, the wife filed for dissolution of the CT Page 1664 marriage and was separated from the husband and children for approximately a year and a half in the early 1980s. The parties reconciled and resumed a positive marital relationship for four to five years before the marriage again began to deteriorate. The husband began drinking regularly, and began chastising the wife for her previous indiscretion and accusing her of having further affairs. By the time of the parties separation in 1997, the wife was involved in both alcohol and drug use, although she is not presently using either. There is fault on the part of both parties, but the wife's principal pre-separation indiscretions occurred eighteen years ago, while the husband's often abusive remarks about the wife were a continuing pattern virtually throughout the marriage. Although the court has considered fault in formulating its orders, fault is not a significant factor.
The husband signed a promissory note to his parents for $15,000.00 in October, 1980 in connection with funds advanced by them for the purchase of the parties' first home, a two family house in Bristol purchased in 1981 for $48,000.00 and subject to a mortgage of $33,000.00. When the house was sold in 1986, there was approximately $78,000.00 in equity, but only approximately $54,000.00 was used for the purchase of the home the parties have owned since then. Nevertheless, the money was not repaid to the husband's parents at that time, and neither principal or interest was paid between 1980 and at least 1997, after this action was commenced.[1] The husband claims that he is entitled to a credit from the proceeds of the marital home to enable him to repay the sum. In his testimony, he claimed entitlement to $32,000.00, representing principal and accumulated interest, while in his proposed orders he seeks a credit for $10,000.00. The claims are without merit. First, in previous financial affidavits submitted to the court during the pendency of this case, the husband omitted listing the debt to his parents as a liability, casting doubt on his credibility on the subject of whether the debt exists. Secondly, at least until 1997, when the husband claims to have made a partial payment of principal and interest, the note was unenforceable because the statute of limitations for an action to collect it had passed. Connecticut General Statutes, Section 42a-3-318 (b). The wife cannot be required to pay a debt which she did not incur and which neither party had a legal obligation to repay after October, 1990.
The wife is presently employed in a clerical position at Bristol Hospital, where she earns an average of $234.00 per week based on an hourly rate of $8.88. She has an earning capacity of CT Page 1665 $355.00 per week, and cannot be expected to earn significantly more in the future because of her limited educational background. The husband is presently unemployed, but before August, 1998 was earning $55,000.00 per year at Stanley Tools, where he had worked for twenty-five years. He has received severance pay of $630.00 per week since his employment terminated, but will receive no further payment after February 28, 1999, when he will become eligible to receive unemployment benefits. Although he testified that he has had difficulty finding work, he has not devoted much effort to looking.
The parties dispute the value of the house. The wife testified that the house is worth $120,000.00, while the husband set its value at $112,000.00 and submitted an appraisal supporting that figure. The wife based her valuation on what similar homes in the neighborhood had brought at sale. However, she has not lived in the neighborhood for nearly two years. The appraiser indicated and the court finds that real estate values in Bristol have declined during that period. The court finds the husband's testimony concerning value to be more credible, and finds the value of the parties' house to be $112,000.00, subject to a mortgage with a current principal balance of $52,750.00.
In fashioning its orders, the court has considered the statutory criteria set forth in Sections 46b-62, 46b-81, and46b-82 of the Connecticut General Statutes as well as relevant case law. The court orders the following:
1. The Marriage of the parties shall be and is hereby dissolved.
2. The husband will pay the wife alimony of $200.00 per week for ten years, commencing on May 1, 1999. Alimony shall not be modifiable as to term. Alimony shall terminate on the death of either party or the remarriage of the wife. The husband will pay the wife alimony of $50.00 per week commencing on February 8, 1998 and continuing until May 1, 1999.
3. The husband will transfer to the wife, by way of Qualified Domestic Relations Order (QDRO), one half of the value of his 401k plan, one half of the value of his Individual Retirement Account (IRA), and one half of his Stanley Works Pension. The wife shall share in any loss or gain in such accounts between the date of this judgment and the date of distribution. The husband's attorney shall prepare the necessary QDRO documents within thirty days hereof. CT Page 1666
4. The husband is enjoined from invading, alienating, anticipating, or liquidating the portion of his 401k plan which he retains without prior order of the court so long as he has an obligation to pay alimony under this judgment, and shall name the wife as the irrevocable beneficiary of the proceeds of the said 401 k plan in the event of his death during that period. The husband shall notify the holder/administrator of the 401 k plan of this order and his designation of the wife as beneficiary by mailing the holder by certified mail, return receipt requested, a writing designating the beneficiary and advising the holder/administrator of the contents of this order. The husband shall provide the wife's attorney with a copy of the letter, the beneficiary designation, the certification receipt, and the acknowledged green return card within thirty days hereof. The husband may, at his option, obtain life insurance in the amount of seventy five thousand dollars, naming the wife irrevocable beneficiary, in lieu of this order, but in that event shall maintain such insurance at his expense during the time he is obligated to pay alimony. The amount of insurance required if the husband elects to obtain insurance shall be in the nature of support and shall be modifiable.
5. The husband shall pay the wife the sum of $6,388.50 upon the sale or remortgage of the marital home as set forth herein. This sum represents one half of the sum the husband withdrew from marital assets during the pendency of this action in violation of court orders.
6. The husband shall transfer to the wife one half of all stocks and mutual funds owned by him, including but not limited to the Stanley Works stocks he owns.
7. Each party shall pay the debts listed on his or her financial affidavit, and shall hold the other harmless with respect to those debts, and the wife shall pay the Sears bill in the amount of $200.00 and any uninsured amounts due on her hospital bills for aftercare and in connection with treatments on and around November 12, 1998.
8. The court will retain jurisdiction over the issues of personal property. The parties will mediate the issues of personal property before family relations. If they are unable to reach agreement, they can return to court for further hearing and orders on this issue. CT Page 1667
9. The husband shall pay the wife the sum of $2,200.00 representing an arrearage on pendente lite alimony payments due. The arrearage shall be paid upon the sale or remortgage of the house as set forth herein.
10. The husband shall pay the wife the sum of $2,500.00 as counsel fees upon the sale or remortgage of the house as set forth herein.
11. Each party shall retain the bank accounts listed on their respective financial affidavits.
12. The wife shall receive from the husband and the husband shall pay the wife the sum of $29,625.00 as her share of the marital home at 176 Brentwood Drive, Bristol. Upon payment of that amount and the sums ordered to be paid in Paragraphs 5, 9, and 10 of this judgment, the wife shall execute and deliver a quit claim deed conveying to the husband all her right, title, and interest in and to the real property at 176 Brentwood Road, Bristol, Connecticut. The payment of these amounts shall be made on or before June 1, 1999. If the payments have not been made prior to that date, the house shall immediately be listed for sale and shall be sold. Both parties shall cooperate in expediting the Sale of the house. The house shall have the right to choose the realtor, but shall not sign a listing contract for a period longer than sixty days, which may be renewed by agreement of the parties or on further order of the court, it being the intent of this order that the plaintiff shall receive payment as quickly as possible.
Judgment shall enter in accordance with these orders on the plaintiff' s complaint. The defendant's cross complaint shall be withdrawn.
BY THE COURT,
___________________________ GRUENDEL, J.